No. 24-2787


**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**


LEA JOHNSON AND SAMANTHA JOHNSON,

*Plaintiffs – Appellants,*

v.

FREEDOM MORTGAGE CORPORATION

*Defendant – Appellee.*

Appeal from the United Stated District Court
for the District of Minnesota

No. 0:21-cv-02760-KMM-ECW

**BRIEF OF PLAINTIFFS-APPELLANTS LEA JOHNSON AND
SAMANTHA JOHNSON**

Jenna Dakroub
**CONSUMER ATTORNEYS**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525

*Attorneys for Appellants
Lea and Samantha Johnson*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Plaintiffs-Appellants Lea and Samantha Johnson ("the Johnsons") timely submitted a monthly mortgage loan payment to Defendant-Appellee Freedom Mortgage Corporation ("FMC") in the form of a cashier's check, including a piece of paper with their loan number on it; but FMC informed consumer reporting agencies that the Johnsons' payment was late, and refused to correct that misinformation upon receiving Plaintiffs' dispute. Plaintiffs alleged that FMC's actions violated 15 U.S.C. § 1681s-2(b), which is part of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") because FMC's reporting inaccurately omitted facts about Plaintiffs' willingness and ability to make timely payments. The district court granted summary judgment to FMC, ruling that, as a matter of law, the Johnsons' payment was late because they failed to follow FMC's instructions. Specifically, the Court accepted FMC's post-hoc explanation that the Johnsons had not followed FMC's payment instructions to write their loan number on the face of the check. This ruling was error because the district court failed to recognize a disputed question of fact about whether the Johnsons complied with FMC's payment instructions, and because it misapplied the standards set by § 1681s-2(b) and 12 CFR § 1022.41(a), which required FMC to accurately report the Johnsons' performance of their mortgage loan obligations. Because this case requires the interpretation of federal statutes and regulations and an assessment of complex factual issues, the Johnsons suggest that oral argument is warranted and that each side be given 20 minutes to present their arguments.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned, counsel of record for Plaintiffs-Appellants Lea and Samantha Johnson, certifies that the following is a full and complete list of all parties in this action, including any parent corporation and any publicly held corporations that own 10% or more of its stock.

1. Lea Johnson, Plaintiff-Appellant

2. Samantha Johnson, Plaintiff-Appellant

3. Freedom Mortgage Corporation, Defendant-Appellee

4. Parent Companies: None

5. Subsidiaries Not Wholly Owned: None

6. Publicly Held Companies: None

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. vi

STATEMENT OF JURISDICTION ..................................................................1

STATEMENT OF ISSUE ....................................................................................2

STATEMENT OF THE CASE ............................................................................3

  I.  **Factual Background** ........................................................................ 3

    A.  *The Johnsons' Mortgage Loan Account with FMC* ..................................... 3

  II.  **Procedural Background** .................................................................. 9

    A.  *The Johnsons' Claim* .................................................................. 9

    B.  *FMC's Motion for Summary Judgment* ...................................................... 10

    C.  *The district court's decision to grant summary judgment to FMC* ............ 11

SUMMARY OF THE ARGUMENT ..................................................................16

ARGUMENT .......................................................................................................17

  I.  **Under 15 U.S.C. § 1681s-2(b) and 12 C.F.R. § 1022.41(a), FMC must correct "inaccurate or incomplete" information with about the nature of a consumer's obligations and the consumer's performance of those obligations upon receipt of a dispute from the consumer through a CRA. The district court erred in granting summary judgment to FMC because it misunderstood the legal standard for accuracy and failed to consider whether a jury could find that FMC's reporting provided an incomplete and/or inaccurate reflection of the Johnsons' obligations and of their performance of those obligations.** .................................................... 17

    A.  *Standard of Review* ...................................................................... 17

    B.  *Section 1681s-2 imposes two principal duties on the furnishers of consumer information: to provide accurate and complete information to consumer reporting agencies; and to investigate and correct inaccurate or incomplete information when a consumer disputes their reporting to a consumer reporting agency.* .............................................................. 18

B. *The district court erred in concluding that FMC's reporting about the Johnsons was accurate as a matter of law because it viewed the record evidence in terms of the wrong legal standard.* .................................................... 23

**CONCLUSION AND STATEMENT OF RELIEF SOUGHT** ........................... 37

**CERTIFICATE OF COMPLIANCE** .................................................. 38

**CERTIFICATE OF SERVICE** ......................................................... 39

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. EMC Mortg. Corp.*, 631 F.3d 905 (8th Cir. 2011) ............ 14, 31, 32, 34

*Anderson v. Experian Info. Sols., Inc.*, No. 08-CV-5151 (PJS/JJK)
 2009 U.S. Dist. LEXIS 102032 (D. Minn. Nov. 2, 2009) ...................................33

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................17

*Chiang v. Verizon New Eng.*, 595 F.3d 26 (1st Cir. 2010) ......................................22

*Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020) ......................................23

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147
 (9th Cir. 2009)........................................................................................ 2, 21, 24, 32

*Green Tree Acceptance, Inc., v. Wheeler*, 832 F.2d 116
 (8th Cir. 1987)...............................................................................................26

*Hrebal v. Nationstar Mortg. LLC*, 385 F. Supp. 3d 849
 (D. Minn. 2019) ...................................................................................... 2, 14, 35

*Hurocy v. Direct Merchants Credit Card Bank, N.A.*,
 371 F. Supp. 2d 1058 (E.D. Mo. 2005) ............................................... 19, 21

*In re Turner Crossroads Dev. Co.*, 277 N.W.2d 364 (Minn. 1979) ........................26

*Johnson v. Securitas Sec. Services USA, Inc.*, 769 F.3d 605
 (8th Cir.2014).........................................................................................................18

*Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C.Cir. 1984) ...........................22

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186
 (10th Cir. 2013)...................................................................................... 2, 22, 24, 32

*Lloyd v. FedLoan Servicing*, 105 F.4th 1020 (8th Cir. 2024) ........................... 20, 21

*Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057
 (9th Cir. 2002).......................................................................................................19

*Peoples v. SunTrust Bank*, No. 17-cv-4235 (WMW/HB),
 2018 WL 7020229 (D. Minn. Apr. 18, 2018) .....................................................11

*Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954
 (8th Cir. 2000)......................................................................................... 2, 26, 29

*Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).........................................18

*Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142
 (4th Cir.2008).........................................................................................................22

*Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890 (5th Cir.1998) .......................21

*Taylor v. Tenant Tracker*, 710 F.3d 824 (8th Cir. 2013) ...........................................33

*TCF Nat'l Bank v. Market Intelligence, Inc.*, 812 F.3d 701 (8th Cir. 2016)............17

**Statutes**

15 U.S.C. § 1681 .................................................... 2, 8, 25, 26

15 U.S.C. § 1681(d) .......................................................26

15 U.S.C. § 1681e(b) .....................................................16

15 U.S.C. § 1681p .........................................................8

15 U.S.C. § 1681s-2(a) ......................................... 20, 26, 38

**15 U.S.C. § 1681s-2(b)** ...................................... passim

28 U.S.C. § 1291 ...........................................................8

28 U.S.C. § 1331 ...........................................................8

**Rules**

Fed. R. Civ. P. 56(c) ....................................................24

**Regulations**

**12 C.F.R. § 1022.41(a)** ................................... passim

## <u>STATEMENT OF JURISDICTION</u>

This case arises from Plaintiffs-Appellants Lea Johnson and Samantha Johnson's ("the Johnsons") claims against Defendant-Appellant Freedom Mortgage Corporation ("FMC") under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). The district court had jurisdiction of this case under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

The Johnsons appeal from the district court's order of August 1, 2024, App. 1; R. Doc. 93, which granted FMC's Motion for Summary Judgment, App. 43; R. Doc. 80. The Johnsons filed their Notice of Appeal, App. 498; R. Doc. 96, in the district court on August 30, 2024, making it timely under Federal Rule of Appellate Procedure 4(a)(1)(A). Because the district court's summary judgment order resolved all of the issues in the case, this Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUE

I.      **Under 15 U.S.C. § 1681s-2(b) and 12 C.F.R. § 1022.41(a), FMC must correct "inaccurate or incomplete" information about the nature of a consumer's obligations and the consumer's performance of those obligations. Did the district court err in granting summary judgment to FMC because it misunderstood the legal standard for accuracy and failed to consider whether a jury could find that FMC's reporting provided an incomplete and/or inaccurate reflection of the Johnsons' obligations and of their performance of those obligations?**

*Porous Media Corp. v. Midland Brake, Inc*., 220 F.3d 954 (8th Cir. 2000)

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013)

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009)

*Hrebal v. Nationstar Mortg. LLC*, 385 F. Supp. 3d 849 (D. Minn. 2019)

<u>**STATEMENT OF THE CASE**</u>

## I.    Factual Background

### A.    *The Johnsons' Mortgage Loan Account with FMC*

In 2019, the Johnsons bought a house in Cottage Grove, Minnesota, and they funded the purchase with a mortgage loan ("the Loan") issued on October 4, 2019, by Results Mortgage, LLC, a Minnesota limited liability company. Purchase Money Mortgage, App. 65; R. Doc. 83-1 at 3-22.[1] The Loan was initially serviced by Sterns Lending, but, on November 28, 2019, Freedom Mortgage Corporation ("FMC") became the servicer. *See id*. at 3; *see also* FMC Welcome Letter, App. 65; R. Doc. 83-1 at 24. On December 6, 2019, FMC sent the Johnsons a "Welcome Letter" instructing them to make all future loan payments to FMC and providing general instructions regarding payments. *See* FMC Welcome Letter, App. 65; R. Doc. 83-1 at 24-29. The Welcome Letter provided information regarding how the Johnsons could set up an online account with FMC, through which they could make their payments electronically. *See id*. at 24. The Johnsons initially made their payments to FMC online, and those payments were all timely. *See* Deposition of Lea Johnson. App. 231; R. Doc. 86-2 at 12; *see also* April Billing Statement, App. 65; R. Doc. 83-1 at 33 (showing payment history).

---

[1] All page number citations to record evidence are to the automated page number generated by the district court's ECF system.

3

The "Contact and Payment Information" section of the Welcome Letter also set forth general instructions for payments made by mail.

> Starting 11/29/19, please make your checks payable to Freedom Mortgage Corporation (include your mortgage loan number ******5113) and send to:
> Freedom Mortgage Corporation
> PO Box 6656
> Chicago, IL 60680-6656

FMC Welcome Letter, App. 65; R. Doc. 83-1 at 24. In a separate section, entitled "New Billing Statement," the Welcome Letter instructed that "If a payment is due before you receive your new Freedom Mortgage Corporation billing statement, please send your payment to Freedom Mortgage Corporation at the address listed in the "Contact and Payment Information" section above. Be sure to include your mortgage loan number (******5113) **on the check**." *Id*. at 25 (emphasis added).

On March 20, 2020, in the United States Bankruptcy Court for the District of Minnesota (St. Paul), the Johnsons filed a petition for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code. *See* Docket Entries, Petition No. 20-30815, App. 217; R. Doc. 86-1 at 2-4. The Johnsons did not, however, seek to discharge their obligations in connection with the Loan, and they reaffirmed those obligations as part of the bankruptcy process. Reaffirmation Agreement, App. 217; R. Doc. 86-1 at 5-14.

B.    *FMC's Rejection of the Johnsons' Timely Payment by Cashier's Check*

On April 1, 2020, the Johnsons received their monthly Billing Statement from FMC, reflecting a current amount due of $1,595.12, which was consistent with the terms of the pending reaffirmation agreement. *See* April Billing Statement, App. 65; R. Doc. 83-1 at 33-34; *see also* Reaffirmation Agreement, App. 217; R. Doc. 86-1 at 5. The monthly payment identified in the April Billing Statement was due on May 1, 2020. *See* April Billing Statement, App. 65; R. Doc. 83-1 at 33. Like all of its standard monthly statements, FMC's April Billing Statement set forth a summary of account and payment history information on the first page. *See id.* Because the Johnsons had filed for bankruptcy, there was also a "Bankruptcy Message," which informed them that the statement was for informational purposes and did not reflect an attempt to collect a debt. *See id.* At the bottom of the first page of the statement, FMC included a tear-off payment coupon for use with payments sent by mail. *See id.*

The instructions on the billing statement and on the coupon itself make it clear that FMC expected that, when the Johnsons submitted their payment by mail, they would include the coupon in the envelope with the payment check. The coupon is headed with the instruction "Detach and return bottom portion with your payment." April Billing Statement, App. 65; R. Doc. 83-1 at 33. The payment coupon is printed with the Johnsons' names and the "loan number" for the Loan.

*See id*. It also denotes the amount of the payment due and includes a box in which the payor can write "Total Amount Enclosed," which would be the sum of the monthly amount due and additional amounts to be directed towards escrow or the reduction of the principal balance. *See id*. Finally, the coupon includes a mailing address for FMC, which is placed immediately above a bar code, known as "Facing Identification Mark," which the United States Postal Service ("USPS") uses to facilitate mail processing. *See id*.; *see also* United States Postal Service, "Mailpiece Design Requirements" (available at https://about.usps.com/publications/pub600/pub600_006.htm).

The second page of FMC's April Billing Statement included a section entitled "Payment Information." *See* April Billing Statement, App. 65; R. Doc. 83-1 at 33. This section provided instructions for how the Johnsons could obtain a precise payoff amount and for how they could be sure that payments above the monthly amount due could be directed towards the reduction of the principal balance. *See id*. This section also included instructions for making payments by mail. *See id*. Those instructions stated:

> Payments by Mail - To avoid processing delays make your check or money order payable to Freedom Mortgage and include your loan number. Please do not send cash or correspondence with your payment.

*Id*.

The Johnsons wanted to make their payment online, as they had done before; but, apparently because of the bankruptcy, FMC would not accept payments from them over the internet, requiring the Johnsons to submit their payment by mail in the form of a cashier's check. Lea Johnson Dep., App. 231; R. Doc. 86-2 at 17. On April 28, 2020, the Johnsons mailed a cashier's check to FMC for the payment due on May 1 ("the "May Payment"). Payment Check, App. 65; R. Doc. 83-1 at 60-64. The check was issued by Bell Bank and was made payable to "Freedom Mortgage Corporation" for the amount of $1,596.00. *Id*. at 60. At the top right corner of the check, "Samantha Johnson" was identified as the "Remitter." *Id*. In lieu of the payment coupon that FMC had supplied with the monthly statement, and because Bell Bank did not include the loan number on the face of the cashier's check, the Johnsons included a hand-written document with the May Payment, on which they wrote the same kind of information that was pre-printed on the payment coupon: their names, the property address associated with the Loan, and the loan number. Lea Johnson Dep., App. 231; R. Doc. 86-2 at 34-35. They placed the check and the document in an envelope and mailed it. *See id*. They also wrote the loan number on the outside of the envelope along with their return address. *Id*.

FMC admits that it received the cashier's check. Deposition of Tanya Tarver, App. 310; R. Doc. 86-3 at 151. But FMC apparently did not notice the document with the loan number and asserts that it did not know how to credit the check

because it services loans for thirty-four different borrowers named Samantha Johnson and because the check was payable for an amount that was different than the Johnsons' monthly payment. *Id*. at 158-59. After the Johnsons' payment date had passed, FMC returned the check to Bell Bank, which informed Plaintiff that their payment had been returned. Lea Johnson Dep., ECF 86-2 at 37-40.

By the time they heard from Bell Bank about the returned cashier's check, the Johnsons had received their next monthly statement from FMC, which did not credit them for the May Payment. Lea Johnson Dep., App. 231; R. Doc. 86-2 at 35-36, 41. At approximately the same time, the Johnsons learned that FMC was reporting to credit reporting agencies that the Johnsons had been delinquent in making the May Payment. *Id*. at 42. Lea Johnson called FMC regarding the payment and explained the situation, even offering to send FMC a copy of the cashier's check that the Johnsons had mailed on April 28. *Id*. at 43-48. FMC responded that such proof would not be necessary. *Id*. the Johnsons then submitted a replacement cashier's check, which FMC accepted. *Id*. at 40-41.

Between September 22, 2020, and June 16, 2021, the Johnsons mailed ten separate letters to the three CRAs, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union"), disputing FMC's reporting of that their payment had been late. *See* Dispute Letters, App. 474; R. Doc. 86-4 at 2-11. The CRAs forwarded the

Johnsons' dispute letters to FMC, which admits receiving them. *See* FMC's Responses to Requests for Admission, App. 485; R. Doc. 86-5 at 6-9. Despite receiving the Johnsons' multiple disputes, FMC refused to correct its reporting. *Id.*

## II. Procedural Background

### A. *The Johnsons' Claim*

When FMC's erroneous reporting went uncorrected, the Johnsons sued FMC, Equifax, and Trans Union in the district court, asserting causes of action under the FCRA. Specifically, the Johnsons alleged that FMC had violated its duties under 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation and correct its inaccurate reporting in response to their disputes. Complaint, App. 21; R. Doc. 1 at 18-21, ¶¶ 107-21. the Johnsons also alleged that Equifax and Trans Union had violated their duties under 15 U.S.C. § 1681e(b). *Id.* at ¶¶ 84-106, pp. 14-18. The Johnsons settled their claims against Equifax and voluntarily dismissed their claims against Trans Union. *See* Notice of Settlement as to Defendant Equifax, R. Doc. 19; Notice of Voluntary Dismissal with Prejudice as to Defendant Trans Union LLC Only, R. Doc. 23; Stipulation of Dismissal with Prejudice as to Defendant Equifax, R. Doc. 36; Order of Dismissal as to Equifax, R. Doc. 38.

B. *FMC's Motion for Summary Judgment*

After discovery, FMC moved for summary judgment. Motion for Summary Judgment, App. 43; R. Doc. 80. FMC argued that it could not be liable for violating its duties under § 1681s-2(b) because there could be no dispute that its initial reporting was accurate and did not require correction or modification. According to FMC, the evidence showed beyond question that the Johnsons did not comply with FMC's payment instructions when making the May Payment because they included the loan number and other identifying information on a document sent along with that check instead of writing their loan number on the face of the cashier's check. FMC contended that the Johnsons' submission of the cashier's check could not be considered a timely payment because their noncompliance with the payment instructions prevented FMC from processing the payment before the payment deadline. FMC's Memorandum, App. 45; R. Doc. 82 at 6-13. FMC also argued that its investigation was reasonable because the Johnsons' disputes were vague and because it could not correct its reporting unless it had proof that the May Payment was processed before its due date. *Id*. at 13-19.

In response to FMC's arguments, the Johnsons contended that there was a dispute of material fact about whether FMC had accurately reported their performance of their obligations for the Loan. The Johnsons' Response in Opposition, R. Doc. 85 at pp. 7-11. Specifically, the Johnsons insisted that they

complied with the payment instructions for the May Payment because, as the instructions prescribed, they included their loan number with their payment when, along with the cashier's check, they provided FMC with a document that included the loan number and other information necessary for FMC to timely process the payment. *See id*. Thus, the Johnsons argued that a jury could find that FMC's report of an untimely payment was incomplete, inaccurate, or materially misleading because FMC's inability to process their initial cashier's check did not reflect on their ability and willingness to make timely payments and to comply with their obligations for the Loan. *See id*. The Johnsons also argued that FMC's failure to correct the initial inaccuracy in its reporting also created a question of fact about whether its investigation was reasonable. *Id*. at 11-15.

      C.    *The district court's decision to grant summary judgment to FMC*

The district court granted FMC's motion, concluding that FMC did not breach its duties under § 1681s-2(b) because, as a matter of law, its reporting was accurate both before and after the Johnsons' disputes. *See*, generally, Order, App. 1; R. Doc. 93. The district court began its analysis by noting that a plaintiff cannot prevail on a cause of action under § 1681s-2(b) if she "is unable to demonstrate that the disputed debt information is inaccurate." *Id*. at 9 (citing *Peoples v. SunTrust Bank*, No. 17-cv-4235 (WMW/HB), 2018 WL 7020229, at *5 (D. Minn. Apr. 18, 2018). The district court concluded that "there is no genuine dispute of

material fact regarding the accuracy of [FMC]'s reporting because all of the following facts were undisputed: that the Johnsons' initial cashier's check "did not contain a check[2] number;" that the amount of the Johnsons' cashier's check was slightly different than the payment amount; that thirty-four people named Samantha Johnson had accounts with FMC at the time of the May Payment; that FMC "deemed the check nonconforming because it lacked the necessary identifying information on the check, i.e., the loan number;" and that, only after the deadline for the May Payment, did the Johnsons submit a payment where "the loan number appeared on the check itself." Order, App. 1; R. Doc. 93 at 11-12. Considering all of these facts as undisputed, the district court concluded that Plaintiff's initial payment attempt did not conform to FMC's requirements, which were necessary to make the payment timely and effective. *See id*. Therefore, the district court concluded that FMC's reporting was accurate as a matter of law. *See id*.

After reaching this conclusion, the district court discussed and rejected the Johnsons' arguments regarding accuracy. Order, App. 1; R. Doc. 93 at 12-19. With respect to the applicable standard for assessing the accuracy of a furnisher's

---

[2] The district court's use of the word "check" here appears to be a typographical error. The Johnsons' initial cashier's check includes a check number: 925919. *See* Cashier's Check, App. 65; R. Doc. 83-1 at 60. In light of the context for this quotation, the district court apparently meant, "loan number."

reporting, the district court held that this standard is defined by 15 U.S.C. § 1681s-2, which provides that furnishers are prohibited from "'furnishing any information related to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.'" Order, App. 1; R. Doc. 93 at 16-17 (quoting § 1681s-2). But the district court erred in identifying the precise location of this statutory language. The district court attributed this quotation to § 1681s-2(b). *See id*. at 17. But, in fact, that quotation does not appear anywhere in § 1681s-2(b) but rather in § 1681s-2(a)(1)(A).

With this understanding of the applicable legal standard in mind, the district court considered the Johnsons' arguments that FMC's reporting was inaccurate because it presented an incomplete and/or materially misleading impression of their ability and willingness to fulfill their obligations with respect to the Loan and to make timely payments, even if that reporting was technically accurate. Order, App. 1; R. Doc. 93 at 12-14, 17-18. The district court observed that this Court has never addressed the question of whether furnishers violate the FCRA if they report information that is technically accurate but materially misleading. *Id*. at 17-18. In addition, the district court held that even if the applicable standard for accuracy prohibited the reporting of technically accurate but materially misleading information, "the Court would conclude that the information here was not misleading. The fact that the Johnsons tried unsuccessfully to pay their bill on time

does not make the report that they failed to do so misleading." *Id*. at 18 (footnote omitted). Along similar lines, the district court concluded that FMC's reporting was accurate as a matter of law because the Johnsons' submission of the initial cashier's check did not conform to FMC's payment instruction, and this nonconforming submission prevented FMC from crediting the Johnsons' account before the deadline for the May Payment. As the district court explained, "there is no dispute that . . . the lack of account number prevented it from being attributed to an account." *Id*. at 14.

The district court considered whether its conclusions were consistent with case law. In this connection, it discussed this Court's ruling in *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905 (8th Cir. 2011). In the district court's view, in *Anderson*, this Court held that a furnisher can accurately report that a consumer's payment was late even if payment was submitted on time but was not timely credited because of a processing error by the furnisher. *See* Order, App. 1; R. Doc. 93 at 15-16 (discussing *Anderson*). On the basis of its reading of *Anderson*, the district court concluded that FMC's reporting was still accurate as a matter of law even if FMC's own errors caused the delay in crediting the May Payment. *See id*.

The district court also discussed the Johnsons' citation of *Hrebal v. Nationstar Mortg., LLC*, 385 F. Supp. 3d 849 (D. Minn. 2019). The district court noted that in *Hrebal*, the facts involved a "significant dispute regarding whether the

reporting at issue was inaccurate, accurate but incomplete, or misleading." Order, App. 1; R. Doc. 93 at 18. The district court concluded that *Hrebal* could not apply because it was distinguishable from the Johnson's case on the facts:

> The facts before this Court are much more straightforward: although the Johnsons tried to pay their bill on time, they were unsuccessful. This fact was proven by the investigations done in response to the inquiries sent by the CRAs in 2020 and 2021, and it has been more fully proven by the discovery and summary judgment record in this case.

*Id*. at 18-19.

For all of these reasons, the district court entered summary judgment for FMC and dismissed the Johnsons' claims with prejudice. Order, App. 1; R. Doc. at 93.

# SUMMARY OF THE ARGUMENT

Through 15 U.S.C. § 1681s-2(b) and 12 C.F.R. § 1022.41(a), the FCRA and its attendant regulations require that creditors report accurately about consumers' performance of their loan obligations. Because the language of both the statute and the regulation focus on complete and accurate reporting about consumer performance, they require that a creditor's reporting about a particular consumer be more than technically accurate; it may not mislead its users about the consumer's ability and willingness to make timely payments.

Here, the district court erred in granting summary judgment to FMC because it failed to apply the principles of § 1681s-2(b) and 12 C.F.R. § 1022.41(a) and it held that FMC had fulfilled its duties under the FCRA. This error had two dimensions. First, the district court failed to recognize that there was a disputed question of fact about whether the Johnsons had complied with FMC's payment instructions when they included their loan number *with* their cashier's check instead of *on* the face of that check. Second, the district court failed to recognize that, regardless of whether the Johnsons' May Payment was made in strict accordance with FMC's payment instructions, there was also a question about whether it was accurate to report the Johnsons' performance of their obligations in the same way that it would have reported the performance of a consumer who

never submitted any payment at all, or one who refused to make a payment outright.

**ARGUMENT**

I. **Under 15 U.S.C. § 1681s-2(b) and 12 C.F.R. § 1022.41(a), FMC must correct "inaccurate or incomplete" information with about the nature of a consumer's obligations and the consumer's performance of those obligations upon receipt of a dispute from the consumer through a CRA. The district court erred in granting summary judgment to FMC because it misunderstood the legal standard for accuracy and failed to consider whether a jury could find that FMC's reporting provided an incomplete and/or inaccurate reflection of the Johnsons' obligations and of their performance of those obligations.**

A. *Standard of Review*

This Court conducts a de novo review of district court decisions to grant summary judgment. *TCF Nat'l Bank v. Market Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016).

Fed. R. Civ. P. 56(c) provides that a court may grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that no genuine issues of material fact exist in light of the pleadings, evidence produced in discovery, and affidavits submitted by the parties. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

An issue is "material" if its resolution could affect the outcome of the action. *TCF Nat'l Bank*, 812 F.3d at 707 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering whether a dispute of material fact exists, a court must "'give the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation.'" *TCF Nat'l Bank*, 812 F.3d at 707 (quoting *Johnson v. Securitas Sec. Services USA, Inc.*, 769 F.3d 605, 611 (8th Cir.2014)).

B.      *Section 1681s-2 imposes two principal duties on the furnishers of consumer information: to provide accurate and complete information to consumer reporting agencies; and to investigate and correct inaccurate or incomplete information when a consumer disputes their reporting to a consumer reporting agency.*

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007); 15 U.S.C. § 1681(a)(3)-(4). While primarily aimed at credit reporting agencies ("CRAs"), the FCRA also creates duties for other parties that are involved in credit reporting. These regulated parties include "furnishers," the entities "that furnish[ ] information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c). The FCRA specifically regulates how and what a furnisher can report and how it must respond when there are disputes about its reporting. *See* 15 U.S.C. § 1681s-2 (prescribing the duties of furnishers).

18

The FCRA gives furnishers a duty to ensure that their reports to CRAs are accurate and complete. 15 U.S.C. § 1681s-2(a). The direct enforcement of this duty is expressly assigned to certain federal and state agencies and officials, including the Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB"). 15 U.S.C. § 1681(d). Individual consumers do not have a private right of action under § 1681s-2(a) to enforce a furnisher's duty of accurate reporting. *See Hurocy v. Direct Merchants Credit Card Bank, N.A.*, 371 F. Supp. 2d 1058, 1060 (E.D. Mo. 2005) (citing cases).

But another subsection of § 1681s-2 does give consumers a private right of action against furnishers that is derived from furnishers' duty to provide accurate reports to CRAs. *See Hurocy*, 371 F. Supp. 2d at 1060; *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1058-60 (9th Cir. 2002). Under § 1681s-2(b), when a consumer believes that a furnisher has provided incomplete or inaccurate information to one or more CRAs, she can submit a dispute to those CRAs, which must notify the furnisher about the consumer's dispute. Upon receipt of this notice, the furnisher must "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). Section 1681s-2(b)(1) sets forth the specific requirements for such an investigation, and the consumer may bring an action against the furnisher if it fails to meet these requirements or if it simply fails to conduct an investigation at all. *See Lloyd v. FedLoan Servicing*, 105

F.4th 1020, 1027 (8th Cir. 2024) (discussing the requirements for a furnisher's investigation).

When conducting such an investigation, the furnisher's overarching duty is to ensure that its reporting is accurate. According to § 1681s-2(b)(1), when conducting an investigation, the furnisher must do all of the following:

(B)    review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C)    report the results of the investigation to the consumer reporting agency;

(D)    **if the investigation finds that the information is *incomplete or inaccurate*,** report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)    **if an item of information disputed by a consumer is found to be *inaccurate or incomplete or cannot be verified* after any reinvestigation under paragraph (1)**, for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly-

    (i)    modify that item of information;

    (ii)    delete that item of information; or

    (iii)    permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(B)-(E) (emphasis added). If the furnisher does perform any of these required duties, the consumer may bring a private right of action. *See Lloyd*, 105 F.4th 1020, 1027; *Hurocy*, 371 F. Supp. 2d at 1060.

Although this Court has not addressed the meaning of "inaccurate or incomplete" for the purposes of § 1681s-2(b), other federal courts have done so. The majority of the federal circuit courts have held that a furnisher violates its duties under § 1681s-2(b) if it fails to modify, delete or block information in its reporting that misstates or omits information that is material to an assessment of consumer's creditworthiness, character, general reputation or personal characteristics. For example, in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009), the plaintiff asserted a cause of action under § 1681s-2(b), and the Ninth Circuit held that a furnisher's reporting was inaccurate or incomplete because, when reporting that the plaintiff was delinquent in paying a charge on his credit card, the furnisher omitted the fact that the plaintiff had formally disputed his liability for the charge. The Ninth Circuit noted that "courts have held that a credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Id*. at 1163 (citing *Sepulvado v. CSC Credit Servs., Inc*., 158 F.3d 890, 895 (5th Cir.1998) and *Koropoulos v. Credit Bureau, Inc*., 734 F.2d 37, 40

(D.C.Cir. 1984)). The *Gorman* Court went on to hold that a furnisher violates its duties under § 1681s-2(b) when it omits information from its reporting "that could materially alter how the reported debt is understood." *Id*. Other circuit courts agree. *See*, e.g., *Llewellyn v. Allstate Home Loans, Inc*., 711 F.3d 1173, 1186 (10th Cir. 2013) (holding that, under § 1681s-2(b), the meaning of "incomplete or inaccurate" information "extends not only to false information, which is clearly inaccurate, but to information provided in such a manner as to create a materially misleading impression as well) (internal quotation marks and citations omitted); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012) (discussing cases); *Chiang v. Verizon New Eng.*, 595 F.3d 26, 36 (1st Cir. 2010) (holding that information is inaccurate or incomplete within the meaning of § 1681s-2(b) if the incompleteness of the reported information "must be such as to make the furnished information misleading in a material sense"); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir.2008).

Regulations promulgated by the CFPB provide additional authority regarding the standard of accuracy for furnishers. Title 12 of the Code of Federal Regulations provides regulations for Banks and Banking, and Chapter X of Title 12 includes banking regulations promulgated by the CFPB in connection with its enforcement duties under § 1681(d) of the FCRA. Part 1022 of Chapter X sets forth the CFPB's regulations regarding fair credit reporting, and Subpart E of

Chapter X defines "Duties of Furnishers of Information." According to that definition:

> (a) Accuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly:
>
> > (1) Reflects the terms of and liability for the account or other relationship;
> >
> > (2) Reflects the consumer's performance and other conduct with respect to the account or other relationship; and
> >
> > (3) Identifies the appropriate consumer.

12 C.F.R. § 1022.41(a); *see also Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020) (discussing how 12 C.F.R. § 1022.41(a) defines a furnisher's duty of accuracy).

> B. *The district court erred in concluding that FMC's reporting about the Johnsons was accurate as a matter of law because it viewed the record evidence in terms of the wrong legal standard.*

The district court concluded that, as a matter of law, it was accurate for FMC to report the May Payment as untimely because the undisputed facts established that the Johnsons did not comply with FMC's terms and conditions for submitting a payment until after the deadline for the May Payment had passed. *See* Order App. 1; R. Doc. 93 at 12-19. This conclusion was erroneous because the district court failed to apply the standard for accuracy as recognized by the overwhelming

majority of federal circuit courts and as established by 12 CFR § 1022.41(a). When the Johnsons' allegations and the record evidence are viewed in light of the correct standard, their cause of action under § 1681s-2(b) raised questions that could only be resolved by a jury, and the district court should have denied FMC's Motion for Summary Judgment.

According to the requirements established by § 1681s-2(b) and 12 CFR § 1022.41(a), FMC's reporting about the Johnsons was required to be complete, accurate, and not materially misleading about: (1) "the terms of and liability for" the Loan; and (2) the Johnsons' "performance and other conduct with respect to" the Loan. *See* 12 C.F.R. § 1022.41(a); *see also Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009). Given these requirements, the Johnsons' allegations and the record evidence raised two principal questions: (1) was it accurate for FMC to report that the Johnsons' payment was untimely because, when submitting the May Payment, the Johnsons did not comply with the terms of the Loan, specifically FMC's instructions for payments by mail? (2) did FMC's reporting completely and accurately describe the Johnsons' performance and other conduct with respect to their obligations under the Loan? Because the district court did not

recognize that these were the crucial questions, it did not correctly assess the relevant evidence.

   1.   *The record evidence created a jury question about the Johnsons' compliance with the terms for making mail payments on the Loan because FMC's instructions were not clear and unambiguous.*

The district court erred by concluding that FMC's payment instructions were unambiguous and that the instruction to "include your loan number" with the payment required the Johnsons to write loan number on the check. Order, App 1; R. Doc. 93 at 11-13. In reaching this conclusion, the district court failed to consider all of FMC's payment instructions, as set forth in its Welcome Letter and the April Billing Statement. When all of those instructions are considered together, it is clear that those instructions were ambiguous, and a jury must determine what those instructions meant and whether the Johnsons complied with those instructions when submitting the May Payment.

FMC's terms and conditions for the Johnsons' monthly payments pertain to the contractual relationship created by the Mortgage and Note, which are governed by Minnesota contract law. The Mortgage provided that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Purchase Money Mortgage, App. 65; R. Doc. 83-1 at 13, ¶ 15. The Note does not include a choice-of-law provision, but it was between Results

Mortgage, LLC, which is a Minnesota limited liability company, and the Johnsons, who were both Minnesota residents; and it related to real property located in Minnesota.

According to Minnesota law, when a court seeks to interpret the terms of a contract, it must first determine whether those terms are ambiguous. *Porous Media Corp. v. Midland Brake, Inc*., 220 F.3d 954, 959 (8th Cir. 2000) (citing *In re Turner Crossroads Dev. Co.*, 277 N.W.2d 364, 369 (Minn. 1979)). The meaning of an unambiguous contract is a question of law for the court, but the meaning of an ambiguous contract term is a question of fact for the jury. *Porous Media*, 220 F.3d at 959 (citing *Green Tree Acceptance, Inc., v. Wheeler*, 832 F.2d 116, 117 (8th Cir. 1987)). "A contract term is ambiguous if it is reasonably susceptible to more than one interpretation." *Porous Media*, 220 F.3d at 959.

When viewed in context, the payment instructions that FMC included with the April Billing Statement are ambiguous because the phrase "include your loan number" could have two different meanings: that the loan number should be "included on" the payment check itself, as the district court concluded; or that it should be "included with" the payment check. The payment instructions on the second page of the statement do not expressly state how the loan number should be included with a mailed payment. *See* April Billing Statement, App. 65; R. Doc. 83-1 at 34.

Focusing exclusively on the payment instructions on the second page of the April Billing Statement, the district court concluded that FMC unambiguously required the loan number to be on the payment check because the payment instructions specified that the loan number should be included with the payment and because those instructions also stated "[p]lease do not send cash or correspondence with your payment." In the district court's view, this instruction could only have one meaning: write the loan number on the check and do not include any other documents with the payment. As the district court put it, "Freedom Mortgage clearly instructed its customers to put their loan numbers on payment checks and not to include separate correspondence with the payment." Order, App 1; R. Doc. 93 at 13.

But the district court disregarded a reasonable alternative reading of the instructions. Given the entire context of the April Billing Statement, a reasonable person could construe FMC's instruction to mean that the loan number should be "included with" the payment check, not necessarily on the payment check. This interpretation is reasonable because the statement includes a payment coupon that is pre-printed with the loan number, and because an instruction on the coupon itself directs the payor to include the coupon with the payment. April Billing Statement, App. 65; R. Doc. 83-1 at 33. In addition to this express instruction the coupon's design shows that FMC expected the coupon to be included in the envelope with

payment. The coupon includes FMC's mailing address above a USPS Facing Identification Mark, which shows that FMC contemplated that the coupon would be placed in a window envelope with the mailing address and Facing Identification Mark visible through the window. All these aspects of the April Billing Statement make it reasonable for payors, like the Johnsons, to conclude that they could include their loan number with their check instead of on their check.

In many respects, FMC's inclusion of the payment coupon makes the second interpretation of the instructions more reasonable than the district court's interpretation. In the district court's view, the Johnsons breached FMC's instructions when they included a piece of paper on which they wrote their loan number and other identifying information because that piece of paper was "correspondence" and because FMC directed consumers not to include any correspondence. Order, App. 1; R. Doc. 93 at 13. But the district court's reading of the instructions would lead to the conclusion that consumers should not use the payment coupon, even though the April Billing Statement unequivocally instructs them to include the coupon with their payment.

The payment instructions in FMC's Welcome Letter support the interpretation that it was sufficient for a consumer to include the loan number with the payment check. The Welcome Letter mirrors the April Billing Statement in its general mailing instructions. But it also includes a separate instruction for

situations where a consumer has not received a billing statement by the regular payment due date. *See* FMC Welcome Letter, App. 65; R. Doc. 83-1 at 24-29. According to these instructions, which were set forth in the section entitled "New Billing Statement," FMC instructed that "[i]f a payment is due before you receive your new Freedom Mortgage Corporation billing statement, please send your payment to Freedom Mortgage Corporation at the address listed in the "Contact and Payment Information" section above. Be sure to include your mortgage loan number (******5113) **on the check**." *Id*. at 25 (emphasis added). The use of the phrase "on the check" in these special instructions could lead a reasonable reader to conclude that the regular payment instructions had a different meaning because they were phrased differently. More specifically, a reasonable reader could conclude that she was required to write the loan number on the check itself only when she had not received a payment coupon as part of her monthly billing statement.

The ambiguity of FMC's instructions creates questions of material fact that must be resolved by a jury. First, the jury must resolve what those ambiguous instructions meant. *Porous Media*, 220 F.3d at 959. Once the jury determines what FMC's payment instructions meant, the jury must then determine the first aspect of accuracy under 12 C.F.R. § 1022.41(a): whether FMC's reporting accurately reflects the terms for making payments under the Loan and whether the Johnsons

complied with those terms. The existence of these questions precludes summary judgment, and because the district court failed to recognize the ambiguity of FMC's instructions, it erred in granting summary judgment to FMC.

> 2. *The record evidence created a jury question about whether and to what extent the Johnsons performed their obligations for the Loan.*

The record evidence also gave rise to questions about the second aspect of accuracy under 12 C.F.R. § 1022.41(a): whether FMC's reporting completely and accurately reflected the Johnsons' performance of their obligations under the Loan. And at least some questions about the second aspect of accuracy will arise regardless of what the jury finds about the Johnsons' compliance with the payment terms for the Loan. Even if the jury would find that Johnsons' submission of the May Payment was not consistent with FMC's instructions, there still is a question about whether FMC's reported completely and accurately the nature of the Johnsons' performance. More specifically, there are questions about whether FMC's reporting was inaccurate and/or incomplete because it omitted material information showing that the Johnsons were willing and able to make a timely payment and that the May Payment was not processed before its due date only due to a clerical error about where the Johnsons wrote the loan number.

The district court failed to recognize this question because it misunderstood the legal standard for assessing the accuracy of a furnisher's reporting. As the

district court understood the standard, a furnisher can be liable for inaccurate reporting only if it reports information when it "'knows or has reasonable cause to believe that the information is inaccurate.'" Order, App. 1; R. Doc. 93 at 17 (quoting § 1681s-2). But this statement of the standard is erroneous for several reasons.

First, the district court cited the wrong subsection of § 1681s-2. The district court's opinion attributed the quoted standard to § 1681s-2(b) when it was actually located in § 1681s-2(a)(1)(A). The standard reflected by the district court's quotation applies to the enforcement activities of the FTC and CFPB, not to private causes of action. Because the Johnsons' cause of action arises from § 1681s-2(b), the quoted statutory language simply does not govern the Johnsons' claim.

Second, the district court erred when it concluded that § 1681s-2(b) does not give a furnisher the duty to correct information that is materially misleading. This error can be traced in part to the district court's focus on the wrong subsection § 1681s-2. But it also arises from the district court's disregard of the correct statutory language and its misapplication of this Court's opinion in *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905 (8th Cir. 2011).

When prescribing how furnishers must respond to consumer disputes, § 1681s-2(b) expressly gives furnishers a duty to modify, delete, or block information that is "incomplete or inaccurate." As the majority of federal circuit

courts have recognized, reported information about a consumer is "incomplete" if it omits other information that is material to an accurate understanding the consumer's performance of her credit obligations, among other things. *See*, e.g., *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013) (citing cases); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012) (citing cases); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009) (citing cases).

Although this Court has not affirmatively adopted the approach followed by other federal circuits, the district court was incorrect in concluding that this Court has rejected that approach. Contrary to the district court's analysis, this Court's opinion in *Anderson* does not "hint[ ] that such a standard does not apply to cases involving data furnishers." Order, App. 1; R. Doc. 93 at 17. In *Anderson,* the consumer timely submitted a loan payment by check, but his creditor did not attempt to cash the check for several weeks. *Anderson*, 631 F.3d at 907-08. By the time the creditor presented the check for payment, the consumer had closed his checking account, and the check was never paid. *Id*. As this Court noted, under Minnesota law, when a check is paid, the payment relates back to the date when the check was tendered; but there is no relation back to the date of tender if the check is not paid when presented. *See id*.; *see also Anderson v. Experian Info. Sols., Inc.*, No. 08-CV-5151 (PJS/JJK), 2009 U.S. Dist. LEXIS 102032, at *12 (D. Minn. Nov.

2, 2009) (discussing Minnesota law). Thus, the consumer's payment in *Anderson* could not be considered timely as a matter of Minnesota law, because it was a legal nullity. And the consumer's claim against the furnisher simply did not raise – or even hint at – a question about whether a furnisher's reporting could violate § 1681s-2(b) if it was technically accurate but materially misleading.[3]

Regardless of whether this Court agrees with the majority of federal circuits about whether a furnisher must correct information that is materially misleading, there are questions of fact here about whether FMC's reporting about the May Payment was "inaccurate or incomplete" for the purposes of § 1681s-2(b). Of course, if a jury finds that the Johnsons complied with FMC's instructions when submitting the May Payment, there can be no doubt that FMC inaccurately reported their performance of their obligations. But even if a jury finds that the Johnsons did not precisely comply with the payment instructions, there is still a question whether FMC's reporting was otherwise incomplete. The evidence here shows that the Johnsons were ready, willing, and able to make their May Payment in a timely manner, that they submitted payment in the form of a check that would

_____

[3] In a footnote, the district court also suggests that this Court declined to adopt the materially misleading standard in *Taylor v. Tenant Tracker*, 710 F.3d 824, 827 n.2 (8th Cir. 2013). Order, App. 1; R. Doc. 93 at 17, n.6. This Court's decision is *Taylor* is completely inapposite here because it does not involve a claim under § 1681s-2(b). Rather, *Taylor* addressed the standard for accuracy to be applied to CRAs under 15 U.S.C. § 1681e(b).

have been honored by Bell Bank, and that FMC did not process that payment before its due date only because, at worst, the Johnsons made a clerical error when "including" their loan number with their payment. This evidence would permit a reasonable jury to find that it was misleading and/or incomplete for FMC to omit contextual information about the circumstances of the payment and to simply describe the Johnsons' payment as untimely.

The district court's misunderstanding of the governing legal standard also led it to misapply relevant case law. In the district court's view, *Anderson*, *supra*, was controlling authority, and it contradicted the Johnsons' argument that the furnishers can be required to report the factual context surrounding a late payment. As the district court understood it, *Anderson* supported the proposition that a consumer's attempt to make a timely payment is not a material fact regarding accuracy or completeness. Order, App. 1; R. Doc. 93 at 18 ("the fact that the Johnsons tried unsuccessfully to pay their bill on time does not make the report that they failed to do so misleading."). But, as noted above, the ruling in *Anderson* was much more limited. There, the consumer's attempt to pay was not material because it was a legal nullity; the attempt was voided by the fact that the tendered payment check was eventually dishonored. *Anderson*, 631 F.3d at 907-08. Contrary to the district court's understanding, *Anderson* does not stand for the proposition

that a consumer's *bona fide* attempts to pay a debt are never material to a furnisher's reporting about his creditworthiness.

The opinion in *Hrebal v. Nationstar Mortg. LLC*, 385 F. Supp. 3d 849 (D. Minn. 2019) is persuasive authority, even though the district court found it to be distinguishable. *See* Order, App. 1; R. Doc. 93 at 18-19. In *Hrebal*, the consumer alleged that a furnisher's reporting of a loan delinquency was inaccurate and/or incomplete because the reporting omitted the fact that the consumer had submitted a bona fide dispute about the delinquency. *Hrebal*, 385 F. Supp. 3d at 850-51. The *Hrebal* Court held that the furnisher's omission violated § 1681s-2(b) because information about the consumer's meritorious dispute pertained to whether "any delinquency in his account stemmed more from internal confusion on his mortgage servicer's part than from financial irresponsibility on Hrebal's part." As such, the information about the consumer's dispute was necessary to provide a complete and accurate account of the consumer's creditworthiness and financial responsibility. *See id*.

The opinion in *Hrebal* applies here because the Johnsons' timely submission of a cashier's check pertains to their financial responsibility. By submitting their payment in that form, they demonstrated their willingness and ability to make their payments in a timely manner, and that demonstration is material to understanding their creditworthiness, even if they made a clerical error in where they wrote their

loan number. When FMC's reporting omitted information about their bona fide attempt to make a payment, it created an incomplete representation of the Johnsons' financial responsibility. Thus, the Johnsons made the necessary showing to create a jury question about whether FMC's investigation and subsequent reporting complied with the requirements of § 1681s-2(b).

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

FMC gave the Johnsons payment instructions that were ambiguous, at best. There is no dispute that the Johnsons submitted a payment on time in the form of a cashier's check, but the district court held that, as a matter of law, FMC could correctly inform CRAs that the payment was late because the Johnsons included their loan number ***with*** the payment check instead of ***on*** the face of the payment check. The district court's ruling was error because it failed to recognize that there was a question of fact about whether the Johnsons complied with FMC's payment instructions and because, even if the Johnsons compliance was less than letter-perfect, there was a factual question about whether FMC's reporting accurately and completely reflected the Johnson's performance of their loan obligations, as required by 15 U.S.C. § 1681s-2(b) and 12 C.F.R. § 1022.41(a). The Johnsons ask this Court to reverse the district court's grant of summary judgment to FMC and to remand this case for further proceedings.

RESPECTFULLY SUBMITTED this 4th day of December 2024,

By: */s/ Jenna Dakroub*
Jenna Dakroub, MN #0401650
**CONSUMER ATTORNEYS**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com

## CERTIFICATE OF COMPLIANCE

Federal Rule of Appellate Procedure 32(a)(7)(B), I hereby certify that the foregoing brief of the Plaintiff-Appellants complies with (1) the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) because it was written in Times New Roman, 14-point font and (2) the type-volume limitations contained in Federal Rule of Appellate Procedure 32(a)(7)(B)(i), because it contains 8,074 words, excluding those parts of the brief excluded from the word count under Federal Rule of Appellate Procedure 32(f).

The undersigned further certifies that this brief and addendum complies with Eighth Cir. R. 28A(h) and has been scanned for viruses and is virus free.

RESPECTFULLY SUBMITTED this 4th day of December 2024,

By: */s/ Jenna Dakroub*
Jenna Dakroub, MN #0401650
**CONSUMER ATTORNEYS**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com

# CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

RESPECTFULLY SUBMITTED this 4th day of December 2024,

By: */s/ Jenna Dakroub*
Jenna Dakroub, MN #0401650
**CONSUMER ATTORNEYS**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com