No. 24-2787

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

LEA JOHNSON AND SAMANTHA JOHNSON,

*Plaintiffs – Appellants,*

v.

FREEDOM MORTGAGE CORPORATION

*Defendant – Appellee.*

Appeal from the United Stated District Court
for the District of Minnesota

No. 0:21-cv-02760-KMM-ECW

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS LEA JOHNSON AND SAMANTHA JOHNSON

Jenna Dakroub, MN #0401650
**CONSUMER JUSTICE LAW FIRM**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (480)613-7733
E: jdakroub@consumerjustice.com

*Attorneys for Appellants*
*Lea and Samantha Johnson*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 2

   I.   The district court's decision depended upon its erroneous
   understanding of the standard of accuracy that applies to furnishers under
   § 1681s-2(b). ...................................................................................... 2

   II.    Both before and after the reinvestigation, FMC's reporting was
   inaccurate because it conveyed misleading information about the Johnsons'
   performance of their obligations under the mortgage agreement and about
   their financial responsibility. ............................................................. 6

   III.   There was evidence to permit a reasonable jury to find that FMC's
   investigation was unreasonable. ........................................................ 14

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ........................... 20

CERTIFICATE OF COMPLIANCE ................................................................ 21

CERTIFICATE OF SERVICE ......................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. EMC Mortg. Corp.*, 631 F.3d 905 (8th Cir. 2011) ...............................12

*Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611 (6th Cir. 2012) ...............................6

*Chiang v. Verizon New Eng.*, 595 F.3d 26 (1st Cir. 2010) .......................................6

*Crabill v. Trans Union LLC*, 259 F.3d 662 (7th Cir. 2001) ....................................15

*Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020) .......................................3

*Edeh v. Midland Credit Mgmt.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) .................15

*Garrett v. Morris*, 815 F.2d 509 (8th Cir. 1987) ....................................................11

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) ........ 5, 15, 19

*Hrebal v. Nationstar Mortg. LLC*, 385 F. Supp. 3d 849 (D. Minn. 2019)................9

*Johnson v. MBNA American Bank NA*, 357 F.3d 426 (4th Cir. 2004) ............ passim

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013) .................5

*Lund-Ross Constructors, Inc. v. Buchanan (In re Buchanan)*, 31 F.4th 1091 (8th
    Cir. 2022) ............................................................................................................11

*Malm v. Household Bank, N.A.*, No. 03-4340 ADM/AJB, 2004 U.S. Dist. LEXIS
    12981 (D. Minn. July 7, 2004) ..................................................................... 15, 16

*Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142 (4th Cir. 2008) ............ passim

**Statutes**

15 U.S.C. § 1681 ........................................................................................................1

15 U.S.C. § 1681s-2(a) ...........................................................................................2, 4

15 U.S.C. § 1681s-2(b) ..................................................................................... passim

**Regulations**

12 C.F.R. § 1022.41(a).............................................................................................3, 5

## INTRODUCTION

As both parties' briefs have made clear, there is no dispute about the most crucial facts in this case. Plaintiffs-Appellants Lea and Samantha Johnson ("the Johnsons") timely sent Defendant-Appellee Freedom Mortgage Corporation ("FMC") a cashier's check for their monthly payment in May 2020 ("the May Payment"). But FMC did not credit that payment, and it subsequently reported to consumer reporting agencies ("CRAs") that the May Payment was delinquent. FMC also declined to modify its reporting when the Johnsons disputed its accuracy.

According to the standards imposed by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, FMC's reporting was inaccurate if it did not provide a complete and accurate account of the Johnsons' performance of their obligations on their mortgage loan or of their financial responsibility. FMC fell short of the statutory standard for accuracy because it reported about the Johnsons in exactly the same way that it would report about a consumer who never attempted to make a payment or who submitted a payment with a check that bounced.

The district court erroneously granted summary judgment to FMC because it applied the wrong standard for determining accuracy, and, as a result, misunderstood the import of the undisputed facts and record evidence. Contrary to the district court's conclusion, and contrary to FMC's arguments to this Court, there is a viable jury question here about whether FMC breached its duties under 15 U.S.C. § 1681s-

2(b) by reporting incomplete and inaccurate information and by failing to correct that reporting after its investigation.

## ARGUMENT

**I.     The district court's decision depended upon its erroneous understanding of the standard of accuracy that applies to furnishers under § 1681s-2(b).**

The district court's errors began with its identification of the relevant standard of accuracy that the FCRA imposed upon FMC. As the Johnsons noted in their opening brief, the district court applied a standard taken from 15 U.S.C. § 1681s-2(a), which has no application here; and it disregarded the governing statutory and regulatory language that actually establish the standard. The district court's reliance upon an erroneous conception of the legal standard undermined its analysis of the evidence and its ultimate decision to grant FMC's Motion for Summary Judgment. FMC tries to wave away this error in a footnote by characterizing it as "an error of citation and not an error of law." Appellee's Brief at p. 24 n. 4. But, contrary to FMC's assertion, the district court's error was substantive, significant, and central to its erroneous decision.

The Johnsons' claim against FMC implicates a furnisher's duty to respond to consumer disputes by investigating the disputed information and assuring its accuracy. *See*, generally, 15 U.S.C. § 1681s-2(b). When setting forth the required elements of an investigation, § 1681s-2(b)(1) expressly identifies the standard of

accuracy that a furnisher like FMC must apply in its investigation. The fundamental purpose of a furnisher's investigation is to determine whether the disputed information "is incomplete or inaccurate." 15 U.S.C. § 1681s-2(b)(1)(D). If the disputed information is "inaccurate, incomplete, or cannot be verified," the furnisher must do one of the three things: modify its reporting of that information; delete that information from its reporting altogether; or "permanently block the reporting" of that information. 15 U.S.C. § 1681s-2(b)(1)(E).

The Consumer Financial Protection Bureau ("CFPB") has promulgated regulations to provide guidance about the meaning of accuracy in the context of § 1681s-2(b). As specifically applied to furnishers, the CFPB provides that information "about an account or other relationship with a consumer" is accurate when it:

(1)    Reflects the terms of and liability for the account or other relationship;

(2)    Reflects the consumer's performance and other conduct with respect to the account or other relationship; and

(3)    Identifies the appropriate consumer.

12 C.F.R. § 1022.41(a). The Seventh Circuit has applied § 1022.4 in analyzing the nature and extent of the standard of accuracy set forth in § 1681s-2(b). *See Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020).

FMC does not contend that this statutory and regulatory language does not apply to the Johnsons' claims under § 1681s-2(b). It simply ignores this language and insists that the district court's understanding of "accuracy" was substantively identical to the standard described by the governing texts. *See* Appellee's Brief at p. 24 n. 4. But the district court's opinion belies FMC's position.

In the district court's view, a furnisher violates the standard for accuracy by "'furnishing any information related to a consumer to any consumer reporting agency *if the person knows or has reasonable cause to believe that the information is inaccurate.*'" App. 17; R. Doc. 93 at 17 (emphasis added). The district court attributed this standard to § 1681s-2(b), but it actually comes from § 1681s-2(a)(1)(A), a provision of the FCRA that regulates the relationship between furnishers and CRAs, which has utterly no application to the Johnsons' claim. That claim arises from the following subsection of § 1681s-2, which regulates the relationship between furnishers and consumers. *Compare* 15 U.S.C. § 1681s-2(a) *and* 15 U.S.C. § 1681s-2(b).

The district court's error is crucial here. The standard cited by the district court establishes a kind of "good faith" test for determining whether information is accurate. That is, under § 1681s-2(a), a furnisher is prohibited from providing information to a CRA with the knowledge or reasonable belief that the information is inaccurate. This standard might make sense in assessing whether a furnisher has

violated its statutory duties to a CRA; but the furnisher's statutory duties to consumers are different because they are defined by different language in a different subsection. The standard set forth by the plain language of § 1681s-2(b)(1) and refined by 12 C.F.R. § 1022.41(a) holds furnishers to more than the generalized good-faith standard quoted by the district court. According to the plain language of § 1681s-2(b)(1) and 12 C.F.R. § 1022.41(a), a furnisher's duty to investigate its reporting includes the duty to assure that its reporting provides complete information about a consumer's performance of her obligations to the furnisher. A consumer's cause of action under § 1681s-2(b) implicates this more exacting duty and the high standard of accuracy that this duty involves.

Other federal circuit courts have adopted this understanding of a furnisher's duty to investigate and adjust their furnishing in response to consumer disputes. These courts agree that, given the express language of § 1681s-2(b), especially its focus on "complete" information, the furnisher's investigation must assure that the information in its reporting does not omit information "that could materially alter how the reported debt is understood." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009). A furnisher violates its duty under § 1682s-2(b) if it simply reports that a consumer was delinquent while omitting facts to show that "the consumer's failure to pay the debt does not reflect financial irresponsibility." *Saunders v. Branch Banking & Tr. Co*., 526 F.3d 142, 150 (4th Cir. 2008); *see also*

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012) (discussing cases); *Chiang v. Verizon New Eng.*, 595 F.3d 26, 36 (1st Cir. 2010).

Because it was premised on a misunderstanding of the applicable standard of accuracy, the district court's analysis of the issues was defective at its foundation. This defect prevented the district court from correctly analyzing the decisive issue of accuracy because the district court failed to focus on the controlling question: whether FMC's reporting provided a misleading impression of the Johnsons' performance of their obligations under the mortgage loan and of their general financial responsibility. Instead, it erroneously focused on the question whether FMC had a reasonable belief that the Johnsons' May Payment was late.

**II.    Both before and after the reinvestigation, FMC's reporting was inaccurate because it conveyed misleading information about the Johnsons' performance of their obligations under the mortgage agreement and about their financial responsibility.**

When the correct standard of accuracy is applied here, the district court's grant of summary judgment cannot stand. The undisputed facts and evidence about FMC's reporting and investigation would permit a jury to find that FMC omitted crucial facts about the Johnsons' performance of their obligations on their mortgage loan. Regardless of whether FMC maintained a "reasonable belief" that the Johnsons' May Payment was somehow improper, FMC still had a duty under § 1681s-2(b) to modify

its reporting to reflect the undisputed fact that the Johnsons timely submitted the May Payment in the form of a cashier's check for a sufficient amount. FMC's failure to comply with this duty means that its reporting, both before and after its investigations, provided an incomplete and inaccurate picture of the Johnsons' financial responsibility and performance of their obligations to FMC.

In light of the undisputed facts and evidence in this case, the threshold issue of accuracy involves two subsidiary factual issues: (1) whether the purported delinquency in the Johnsons' May Payment was caused by the Johnsons' inability or unwillingness to meet their financial obligations to FMC or by a clerical error; and (2) if there was a clerical error, whether that error is attributable to the Johnsons or to FMC. The answers to these questions determine whether it was accurate for FMC to persistently report, without context or qualification, that the May Payment was delinquent. And the factual and evidentiary record here demonstrate that these questions must be resolved by a jury, not by the district court through summary judgment.

The Fourth Circuit's decision in *Saunders, supra*, illustrates how, in the context of a § 1681s-2(b) claim, evidence about the factual context of a consumer's contract performance can be crucial for determining the accuracy of a furnisher's reporting. There, the plaintiff obtained an auto loan from a dealer, and the dealer assigned the loan to a bank. *Saunders*, 526 F.3d at 145. When the bank did not send

the plaintiff a payment book, the plaintiff contacted the bank, which informed him that he did not have any payments due. *Id*. The plaintiff made more inquiries with the bank, which continued to inform him that he did not currently owe anything on the loan. *Id*. More than six months after the loan was issued, the bank informed the plaintiff that he was in default on the loan, and it reported the alleged default to CRAs. The plaintiff disputed the reporting with both the bank and the CRAs, but the bank did not change its reporting and did not report that the plaintiff was contesting the bank's reporting that he defaulted on the loan. *Id*. The bank took the position that the plaintiff's failure to pay was undisputed and that it was not inaccurate to report that the plaintiff defaulted because he made no payments. *See id*.

The plaintiff in *Saunders* sued under § 1681s-2(b) and won a jury verdict, and the district court denied the bank's motion for judgment as a matter of law. In affirming the district court's ruling and in upholding the verdict, the Fourth Circuit concluded that it was reasonable for the jury to find that the bank's reporting was inaccurate and/or incomplete because it did not reflect all of the relevant circumstances surrounding the plaintiff's performance of his obligations:

> It is undisputed that BB&T erred in failing to book the account, erred in not providing Saunders with an account number to pay off his loan, erred in repeatedly informing Saunders that he owed nothing, and then informed Saunders that, in spite of BB&T's errors, he owed the complete balance on the loan. Moreover, if the jury credited Saunders' testimony, the jury could reasonably have found that BB&T, upon finally recognizing its own errors, insisted that Saunders make all the

> remaining payments on the underlying debt and pay all late fees and penalties. A reasonable jury could conclude that this demand excused Saunders' nonperformance.

*Saunders*, 526 F.3d at 151. Thus, the decision in *Saunders* demonstrates that, when there is evidence to show that the consumer made a reasonable attempt to perform his obligations under a loan contract, a jury must decide whether it is accurate for a furnisher to report a failure of performance while omitting contextual information.

The decision in *Saunders* corresponds with the opinion in *Hrebal v. Nationstar Mortg. LLC*, 385 F. Supp. 3d 849 (D. Minn. 2019), upon which the Johnsons relied in the district court. As the Johnsons have noted, in *Hrebal,* the district court granted partial summary judgment to a consumer on his § 1681s-2(b) claim, concluding that, as a matter of law, it was inaccurate for a furnisher to simply report that the consumer's account was delinquent when there was a bona fide dispute about whether "any delinquency in his account stemmed more from internal confusion on his mortgage servicer's part than from financial irresponsibility on Hrebal's part." *Id*. at 850-51. Like *Saunders*, *Hrebal* supports the proposition that a furnisher's reporting cannot be accurate as a matter of law if it reports a payment as delinquent when the consumer can show that delinquency is not the product of the consumer's financial irresponsibility.

There is overwhelming evidence that the Johnsons made a reasonable attempt to timely make their payment and that any delinquency with respect to the May

Payment does not reflect any financial irresponsibility on their part. There is no dispute that the Johnsons submitted a cashier's check to FMC before the deadline for the May Payment. FMC does not deny that it received such a check, nor does FMC suggest that the cashier's check would have been dishonored if FMC had presented it for payment. There is also no dispute about why FMC did not credit the May Payment to the Johnsons' account: someone – either the Johnsons or FMC – made a clerical error. Taken together, all of these undisputed facts would permit a jury to find that the Johnsons' May Payment was credited after its due date only because of a clerical error, not because the Johnsons were unable or unwilling to make the May Payment on time.

There is also enough evidence to permit a jury to find that responsibility for the clerical error belongs to FMC, not the Johnsons. As the Johnsons have argued, when the payment instructions are viewed in the context of all of FMC's payment instructions, it was reasonable for the Johnsons to conclude that those instructions permitted them to include their loan number with the payment check and not only on the payment check. Appellant's Opening Brief at pp. 25-30. It was also reasonable for the Johnsons to conclude that a hand-written slip of paper that included the information on the payment coupon did not count as "correspondence" because it was the functional equivalent of the payment coupon, which FMC expected them to submit with their payment. *See id*. A jury could find that it was FMC's clerical error

in failing to pay attention to the information – including the loan number – the Johnsons supplied with the cashier's check that caused the May Payment not to be applied. And such a finding would further support a determination that FMC's reporting did not accurately reflect the Johnsons' performance of their obligations.

FMC offers several counterarguments for affirming the district court's analysis of the issue of accuracy, but none of them are availing. First, FMC contends that the Johnsons waived the right to argue that they did not make a clerical error because their payment was made in conformity with FMC's ambiguous payment instructions. Appellee's Brief at 19-20. More specifically, FMC argues that, because the Johnsons did not emphasize the ambiguity of FMC's payment instructions in the summary judgment brief, they cannot contend here that their submission of the May Payment was consistent with those ambiguous instructions. *See id*. This argument fails because it misstates the rules governing the waiver of appellate arguments. This Court has held that "although a party generally cannot raise new issues on appeal, it can provide additional support for its arguments." *Lund-Ross Constructors, Inc. v. Buchanan (In re Buchanan)*, 31 F.4th 1091, 1095 n.1 (8th Cir. 2022) (citing *Garrett v. Morris*, 815 F.2d 509, 512 n.3 (8th Cir. 1987)). In the district court, the Johnsons specifically argued that there was a disputed issue of fact about whether they complied with FMC's payment instructions. App. 12-15; R. Doc. 93 at 12-15 (discussing the Johnsons' argument on this point). The Johnsons' arguments about

the ambiguity of FMC's instructions are permissible because they constitute additional support for the argument raised in the district court.

Second, FMC argues that, as a matter of law, the factual circumstances of a delinquent payment are never relevant to whether it was accurate for a furnisher to report the delinquency without accounting for those circumstances. On this point, FMC follows the district court's reliance upon this Court's decision in *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905 (8th Cir. 2011). But *Anderson* is distinguishable from this case because, there, the plaintiff could not show that his delinquent payment reflected financial responsibility. In *Anderson*, the plaintiff timely submitted a mortgage payment for December 2006 with a check that was drawn on his personal bank account; but he "closed the bank account without leaving funds to pay the December check" before the mortgage company presented the check for payment. *Id*. at 906-07. On those facts, the *Anderson* plaintiff could not contend that he acted responsibly when he closed his bank account without assuring that all of his outstanding checks had cleared. The facts in *Anderson* are far different than those presented here, given that there is no dispute that the Johnsons' May Payment would have been valid if FMC had not returned their cashier's check to the issuing bank.

Third, FMC argues that its reporting was accurate because there can be no question that the Johnsons failed to perform their obligations under the mortgage agreement. In this connection, FMC asserts that, in her deposition, Lea Johnson

admitted to breaching those obligations. Appellee's Brief at p. 19 (citing App. 264-65; R. Doc. 86-2 at 34-35). But this interpretation of the evidence is a distorted and self-serving reading of Ms. Johnson's testimony. That testimony can be read to reflect her understanding that the Johnsons were required to inform FMC of the loan number associated with the payment, either by writing the number on the check or including the number with the check:

> Q:    Okay. Why did you include that piece of paper?
>
> A.    Because I realized that the account number was not on the cashier's check.
>
> Q:    Okay.
>
> A:    And you guys needed to know what loan number I had, so I included it . . . .

App. 264-65; R. Doc. 86-2 at 34-35. Contrary to FMC's strained interpretation, this testimony would permit a finding that Ms. Johnson believed that her submission was consistent with FMC's instructions, not that she knew she was violating them.

FMC makes another misrepresentation of the record when trying to make the Johnsons entirely responsible for its own inability to process the May Payment. FMC suggests that it was prevented from properly crediting that Payment because, in a phone call to FMC, Lea Johnson "provided false information which affirmatively prevented Freedom from identifying the April Check." Appellee's Brief at p. 29. But

Lea Johnson's phone call had nothing to do with FMC's ability to process the May Payment or to attribute the Johnsons' cashier's check to their account. Lea Johnson called FMC only after FMC had returned the cashier's check to Bell Bank and only after FMC had decided that the Johnsons were delinquent in making the May Payment. *See* App. 265-66; R. Doc. 86-2 at 34-35.

Given the evidence and the undisputed facts, a reasonable jury could find that FMC's reporting was not accurate or complete because it omitted facts that would show that, in the words of the Fourth Circuit, "the consumer's failure to pay the debt does not reflect financial irresponsibility." *Saunders*, 526 F.3d at150. Thus, a jury could find that FMC violated § 1681s-2(b) because its reporting was incomplete and inaccurate and because it declined to correct that reporting after the Johnsons' dispute and after its investigation.

## III. There was evidence to permit a reasonable jury to find that FMC's investigation was unreasonable.

The evidence and the undisputed facts also would permit a jury to find that FMC's investigations were not reasonable. As an alternative basis for affirming the district court's decision to grant summary judgment, FMC argues that, regardless of the accuracy of its reporting, there can be no dispute that it conducted a reasonable investigation. Appellee's Brief at pp. 32-37. More specifically, FMC argues that its investigation was reasonable given that the Johnsons failed to provide it with enough

information to even identify the information that the Johnsons were disputing. But, here again, FMC's argument depends upon an unduly narrow conception of a furnisher's duty to investigate and a misleading interpretation of the evidence about the nature of FMC's investigation.

When a furnisher conducts an investigation pursuant to § 1681s-2(b), its investigation must be reasonable. *Gorman*, 584 F.3d at 1155-56; *see also Johnson v. MBNA American Bank NA*, 357 F.3d 426, 431 (4th Cir. 2004). The reasonableness of a furnisher's investigation depends upon what the furnisher "learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157. An investigation is reasonable if it reflects "a diligent attempt to ascertain the validity of the [dispute]," and such a "diligent attempt" can involve contacting both the consumer and relevant third parties on multiple occasions. *Gorman*, 584 F.3d at 1160; *see also Malm v. Household Bank, N.A.*, No. 03-4340 ADM/AJB, 2004 U.S. Dist. LEXIS 12981, at *13 (D. Minn. July 7, 2004) ("furnishers may need to consult underlying documents such as account applications, rather than simply reviewing data in computerized customer information systems.") (citing *Johnson*, 357 F.3d at 431). As a general rule, whether an investigation is "reasonable" for the purposes of the FCRA is a question of fact for the jury. *Edeh v. Midland Credit Mgmt.*, 748 F. Supp. 2d 1030, 1039 (D. Minn. 2010) (citing *Crabill v. Trans Union LLC*, 259 F.3d 662, 664 (7th Cir. 2001)).

Moreover, the general "data conformity review" type of "investigation" described by FMC here has been uniformly derided as the quintessential "unreasonable investigation" under the FCRA by federal courts throughout the country. *See e.g. Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016) (reversing summary judgment for furnisher where furnisher's investigation was limited to simply confirming the very information in its records that was being challenged); *Boggio*, 696 F.3d 611 (6th Cir. 2012) (reinstating consumer's claim for punitive damages when evidence showed that the furnisher's investigation was nothing "more than a cursory confirmation" of its own records); *Daugherty v. Ocwen Loan Servicing*, L.L.C., 701 Fed. Appx. 246 (4th Cir. 2017) (affirming jury verdict of negligent and willful violation where furnisher merely confirmed the consumer's "ownership of the account" upon receiving the dispute); *Wood v. Credit One Bank*, 277 F. Supp. 3d 821 (E.D. Va. 2017) (granting summary judgment to consumer who showed that account was not his but was opened by a fraudster because furnisher's investigation was merely "superficial" and "cursory".). It is insufficient to escape liability under the FCRA for a furnisher to simply confirm that a disputed account matches the furnisher's internal records. *See Gorman*, 584 F.3d at 1155; *Malm*, 2004 U.S. Dist. LEXIS 12981, at *13.

FMC's primary argument is that its investigation was necessarily reasonable because, as a matter of law, its reporting was accurate at all times. Appellee's Brief

at p. 33. But this argument cannot provide an alternative basis for affirming the district court because, as the Johnsons have shown, there is a viable jury question about whether FMC's reporting was inaccurate. If a jury finds that FMC's reporting provided something less than a complete and accurate account of the Johnsons' financial responsibility and performance of their contract obligations, then there is also a jury question about whether FMC acted reasonably when it investigated their dispute and refused to modify its reporting.

Secondarily, according to FMC, its investigation was reasonable in light of the "vague" information that the Johnsons provided in their disputes. FMC complains that, in their dispute letters to the CRAs, the Johnsons did not "reference the month in dispute, did not provide a copy of the April Check" and "did not suggest that the reported payment delinquency was misleading because it omitted information of their unsuccessful attempt at paying via the April Check." Appellee's Brief at p. 35. FMC insists that its investigation was more than sufficient because it "reviewed its account history, account notes (which reflected its prior conversations with the Johnsons), and payment history. *Id*. at p. 36. In FMC's view, this kind of investigation was enough because, it "cannot be held to a standard of clairvoyance that would require it to read the Johnsons' minds or to speculate about what additional information the Johnsons might suggest needs to be included to avoid a materially misleading omission about the account." *Id*.

FMC distorts the record both when it mischaracterizes the Johnsons' disputes as vague and when it suggests that they supplied false information. Given the Johnsons' phone calls to FMC (which FMC claims to have reviewed in its investigation) and given other information about the account, FMC could not plausibly have been confused or uncertain about the nature of the Johnsons' dispute. Lea Johnson testified that, when she received the Johnsons' mortgage statement in May 2021 and learned that the May Payment had not been credited to their account, she called FMC to inquire, informing FMC that the Johnsons had timely sent a cashier's check. App. 265-66; R. Doc. 86-2 at 34-35.[1] She also testified that she placed other calls to FMC to inform it that the Johnsons had made the May Payment with a cashier's check. *Id*. at 275. When she offered to send a copy of the cashier's check to FMC, FMC declined:

Q.     Did you ever provide that check image to Freedom?

A.     They didn't ask for it, and, when I said I can prove that I actually have the check, they said that's not necessary.

---

[1] In summarizing this call, FMC's account notes assert that Lea Johnson informed FMC that the Johnsons had sent a money order, and FMC contends that this reference to a money order impaired FMC's ability to investigate. Appellee's Brief at 34; *see also* App. 145; R. Doc. 83-1 at 81. But Lea Johnson unequivocally testified that she told FMC that she had sent a cashier's check. App. 265-66, 275, 278; R. Doc. 86-2 at 34-35, 45, 48. This alone raises an issue of credibility for jury determination that cannot be decided as a matter of law.

App. 278; R. Doc. 86-2 at 48. Given the Johnsons' numerous telephone communications with FMC, and given the specific information that the Johnsons provided during those calls, it is absurd to characterize the Johnsons' disputes as "vague" about the details of the May Payment or to suggest that FMC did not have enough information to determine the nature and subject matter of the Johnsons' disputes. Moreover, in light of Lea Johnson's testimony, it is equally absurd for FMC to insist that it "had no way to locate or identify the April Check." Appellee's Brief at p. 6. Lea Johnson offered to send FMC a copy of the check, but it told her not to bother.

All of this evidence would permit a jury to find that FMC's investigation was anything but reasonable. Indeed, if a jury credited Lea Johnson's testimony, it could find that FMC's investigation did not reflect a "diligent attempt" to ascertain the validity of the Johnsons' dispute based on nothing more than FMC's refusal to accept the Johnsons' offer to provide a copy of the check. *See Gorman*, 584 F.3d at 1160. An inspection of the returned cashier's check could have substantiated the Johnsons' account of the May Payment, giving FMC a basis to modify its reporting. *See* App. 124-25; R. Doc. 83-1 at 60-61. But FMC chose not to even make such an inspection. It admits that it only conducted a data conformity review, and, as noted above, such a review is not sufficient, in itself, to constitute a reasonable investigation. *See Hinkle,* supra.

Because the record supports such a finding, FMC cannot be entitled to judgment as a matter of law on the question whether its investigation was reasonable and, therefore, that question cannot provide an alternative basis for affirming the district court's decision.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The record in this case presents factual questions about whether FMC reported accurately about the Johnsons' performance of their obligations under the mortgage agreement and about their financial responsibility. It also presents factual questions about whether FMC conducted a reasonable investigation of the Johnsons' disputes of the accuracy of FMC's reporting. The existence of these factual questions show that the district court erred in granting summary judgment to FMC and that there is no basis upon which that ruling can be affirmed. For these reasons, the Johnsons ask this Court to reverse the district court's order granting summary judgment to FMC.


RESPECTFULLY SUBMITTED this 6th day of February, 2025.

<div style="margin-left:40%">

By: */s/ Jenna Dakroub*
Jenna Dakroub, MN #0401650
**CONSUMER JUSTICE LAW FIRM**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (480)613-7733
E: jdakroub@consumerjustice.com

</div>

## CERTIFICATE OF COMPLIANCE

Federal Rule of Appellate Procedure 32(a)(7)(B), I hereby certify that the foregoing brief of the Plaintiff-Appellants complies with (1) the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) because it was written in Times New Roman, 14-point font and (2) the type-volume limitations contained in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii), because it contains 4,858 words, excluding those parts of the brief excluded from the word count under Federal Rule of Appellate Procedure 32(f).

The undersigned further certifies that this brief and addendum complies with Eighth Cir. R. 28A(h) and has been scanned for viruses and is virus free.

RESPECTFULLY SUBMITTED this 6th day of February 2025,

By: */s/ Jenna Dakroub*
Jenna Dakroub, MN #0401650
**CONSUMER JUSTICE LAW FIRM**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (480)613-7733
E: jdakroub@consumerjustice.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

RESPECTFULLY SUBMITTED this 6th day of February 2025,

By: */s/ Jenna Dakroub*
Jenna Dakroub, MN #0401650
**CONSUMER JUSTICE LAW FIRM**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (480)613-7733
E: jdakroub@consumerjustice.com